## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) |
| | ) |
| **v.** | ) |
| | ) **CRIM NO. 21-CR-411-APM** |
| **STEWART PARKS,** | ) **Judge: Mehta** |
| | ) |
| **Defendant.** | ) |

## MOTION FOR CHANGE OF VENUE

COMES NOW Defendant, Stewart Parks, by and through counsel, pursuant to Rule 21(a) of the Federal Rules of Criminal Procedure, requests a change of venue due to significant prejudice in the District of Columbia ("DC") prohibitive of a fair and impartial trial, invoking his right to a fair trial by an impartial jury under the Fifth and Sixth Amendments. Mr. Parks asserts that detrimental pretrial publicity and community prejudice in DC is so likely to have affected the jury pool that the venire must be presumed as tainted. Defendant proposes that this matter be moved to the Middle District of Tennessee, where he resides, and where he was arrested. Alternatively, if the court denies the motion, Mr. Parks respectfully requests additional jury voir dire and juror questions with the hopes to minimize the potential to have a constitutionally unfit jury pool.

1

**Introduction**

Mr. Parks is charged with four misdemeanors related to events that occurred on January 6, 2022. Mr. Parks has rejected the plea offer and is proceeding to trial. However, Mr. Parks is extremely concerned that, based upon a variety of factors, he will not receive a fair trial in the District of Columbia. Mr. Parks avers that having a trial with a jury pool compromised of residents of the District of Columbia is inappropriate and make his ability to have a fair and impartial jury difficult if not impossible. Accordingly, there is no expectation of a fair and impartial jury in DC and Mr. Parks therefore seeks to have this matter heard in another jurisdiction. His suggestion for the proper venue would respectfully be the Middle District of Tennessee, the jurisdiction in which he currently resides.

**Argument**

The Fifth Amendment and the Sixth Amendment entitle criminal defendants to a fair trial by an impartial jury. Const. amends. V, VI; *see also Skilling v. United States*, 561 U.S. 358, 378 (2010) "The great value of the trial by jury certainly consists in its fairness and impartiality." *United States v. Burr*, 25 F. Cas. 49, 51 (CC Va. 1807). Since the time of common law, an impartial jury is required under the Constitution. *Id; see also Patton v. Yount*, 467 U.S. 1025 (1984). "A fair trial in a

fair tribunal is a basic requirement of due process." *In re Murchison*, 349 U.S. 133, 136 (1955).

The importance of an impartial jury is so fundamental to Due Process that, notwithstanding constitutional venue prescriptions, when prejudice makes it such that a defendant cannot obtain a fair and impartial trial in the indicting district, the district court *must* transfer the proceedings upon the defendant's motion. Fed. R. Crim. P. 21(a); *see also Skilling*, 561 U.S. at 378.

Federal Rule of Criminal Procedure 21(a) requires that a district court "must transfer the proceeding … if the court is satisfied that so great a prejudice against the defendant exists in the transferring district that the defendant cannot obtain a fair and impartial trial there." While the Sixth Amendment provides that the right to trial by jury "of the State and district wherein the crime shall have been committed," the Constitution's place-of-trial prescriptions does not impede transfer of the proceeding to a different district at the defendant's request if extraordinary local prejudice will prevent a fair trial. *Skilling*, 561 U.S. at 358; *see also Sheppard v. Maxwell*, 384 U.S. 333, 362 (1966) ("Due process requires that the accused receive a trial by an impartial jury free from outside influences.").

Accordingly, when examining a Rule 21 motion to transfer venue, a court should consider (1) the size and characteristics of the community; (2) the nature and

extent of pretrial publicity; (3) the proximity between the publicity and the trial; and (4) presumed prejudice. *Skilling v. U.S.*, 561 U.S. 358, 378-81 (2010). Mr. Parks submits that the factors, when weighed, lean towards a transfer of venue, and the court should grant his motion.

### A. Size and characteristics of the community

While the Sixth Amendment provides a right to trial by "jury of the State and district wherein the crime shall have been committed," the Constitution's place-of-trial prescriptions do not impede transfer of the proceeding to a different district at the defendant's request if extraordinary local prejudice will prevent a fair trial. *Skilling v. United States*, 561 U.S. 358 (2010); *see also Sheppard v. Maxwell*, 384 U.S. 333, 362 (1966) ("Due process requires that the accused receive a trial by an impartial jury free from outside influences.").

The nature of the District of Columbia makes it difficult for an individual like Mr. Parks to receive a fair trial. During the course of the evidence, the government will provide evidence that Mr. Parks, a resident of Tennessee, came to the District of Columbia for purposes of supporting the claims of a "stolen election" by then-President Trump. The evidence will show that Mr. Parks, along with his companion

and former codefendant, Matthew Baggott, [1] for political purposes in support of

former President Trump and his elections regarding the election.

The portrayal of the events of January 6th by local media has understandably

painted a picture of anarchy and chaos. *See, e.g.,* Staff, "No pictures, no pictures':

The enduring images from Jan. 6," *The Washington Post* (Jan. 4, 2022), at

https://www.washingtonpost.com/nation/ interactive/2022/photos-jan-6-capitol/; ; D.

Bennett, et al., "41 minutes of fear: A video timeline from inside the Capitol siege,"

*The Washington Post* (Jan. 16, 2021), at

https://www.washingtonpost.com/investigations/2021/01/16/video-timeline-capitol -

siege/ . None of this coverage specifically discusses Mr. Parks and his alleged

misdemeanor charges specifically, which, unfortunately, adds to the problem of

providing Mr. Parks a fair trial. The constant barrage of publicity and coverage has

been particularly skewed, as it places the most sensational stories and events in the

forefront. In an age of sensationalism, the press coverage unsurprisingly focuses on

those stories of the more dangerous actors – those who had assaultive conduct and/or

those who are alleged to attempt to disrupt the electoral count by violent means.

Cases of alleged misdemeanants such as Mr. Parks and his charges such as allegedly

entering the U.S. Capitol and parading within the location without causing any

---

[1] Mr. Baggott has already pled guilty and is scheduled for sentencing on August 5, 2022.

damage are not "exciting" so as to garner media attention. Accordingly, the jury pool is likely to unfairly make Mr. Parks appear like a violent rioter, placing him in a false light unfairly based upon the local news coverage.

Furthermore, the clearly political overtones of this case cannot be ignored when it comes to issue of the jury pool Mr. Parks will face. Mr. Parks evidence will show that Mr. Parks came to the District of Columbia to hear former President Trump, who was the Republican candidate in the last election, speak. Further evidence will also undoubtedly show that the reason for the speech was the claim that President Joseph Biden was not legitimately elected. In the District of Columbia, during the 2020 presidential election, President Biden received 317,323, or 92.15% of the vote, while President Trump received 18, 586, or 5.4% of the vote. *See* *https://electionresults.dcboe.org/election_results/2020-General-Election* With such an overwhelming balance of residents supporting President Biden, with a ratio of 17 Biden/Harris voters to every 1 Trump/Pence voter, it will be incredibly unlikely for Mr. Parks to be able to get a fair and impartial jury pool in a case with such politically charged overtones. Accordingly, the size and characteristics of the jury, given the political leanings and coverage in the news, require the transfer of venue to a jurisdiction that is not as politically skewed as the District of Columbia.

**B. The nature and extent of the pretrial publicity**

The defense avers that the pretrial publicity that has been generated in this case make it difficult for his ability to receive a fair trial in the District of Columbia. The news of the events of January 6th and the repercussions are particularly prevalent in the District of Columbia, where the incident occurred, as opposed to other parts of the country, including Tennessee, where Mr. Parks resides. Accordingly, a transfer of venue would help minimize the effect of the pretrial publicity and would therefore provide a better opportunity of having a constitutionally deficient jury pool. Accordingly, Mr. Parks requests a transfer of venue.

The Supreme Court has overturned convictions where the district court failed to transfer for venue after prejudicial pretrial publicity. *See, e.g., Rideau v. Louisiana*, 373 U.S. 723 (1963); *Estes v. State of Texas*, 381 U.S. 532 (1965); *Sheppard v. Maxwell*, 384 U.S. 333 (1966). The Supreme Court has also reversed convictions where there was a "huge . . . wave of public passion" and where the venire possessed "a belief in [defendant's] guilt." *Irvin v. Dowd*, 366 U.S. 717, 728 (1961) (vacating a conviction and death sentence for the trial court's failure to transfer venue for community publicity); *see also Patton v. Yount*, 467 U.S. 1025 (1984).

7

Over the past few decades, federal courts have interpreted the Supreme Court's venue case law as requiring a show of community effect, in addition to a show of pretrial publicity. For example, in the prosecution for bombing of the federal building, in *United States v. McVeigh*, the district court in the Western District of Oklahoma ruled that the "emotional burden of the explosion and its consequences" and the community prejudice against the defendants accused of the bombing in Oklahoma City was so great that they could not obtain a fair and impartial trial in the state of Oklahoma. *United States v. McVeigh*, 918 F.Supp. 1467 (W.D.Okla. 1996).

The Supreme Court has overturned convictions where the district court failed to transfer for venue after prejudicial pretrial publicity. *See, e.g., Rideau v. Louisiana*, 373 U.S. 723 (1963); *Estes v. State of Texas*, 381 U.S. 532 (1965); *Sheppard v. Maxwell*, 384 U.S. 333 (1966). The Supreme Court has also reversed convictions where there was a "huge . . . wave of public passion" and where the venire possessed "a belief in [defendant's] guilt." *Irvin v. Dowd*, 366 U.S. 717, 728 (1961) (vacating a conviction and death sentence for the trial court's failure to transfer venue for community publicity); *see also Patton v. Yount*, 467 U.S. 1025 (1984).

In some instances, the hostility of the venue community is so severe that it gives rise to a presumption of juror prejudice. *See Patton v. Yount*, 467 U.S. 1025,

1031 (1984) (distinguishing between presumed venire bias and actual juror bias). As recently as 2010, the Supreme Court reaffirmed the presumption approach articulated in *Patton* and identified three factors to guide the lower courts in determining whether a presumption should attach: (1) the size and characteristics of the jury pool; (2) the type of information included in the media coverage; and (3) the time period between the arrest and trial, as it relates to the attenuation of the media coverage. 1 *Skilling*, 561 U.S. at 378.

Where it attaches, the Court has further recognized that the presumption of prejudice overrides juror declarations of impartiality during *voir dire* because such attestations may be insufficient to protect a defendant's rights in particularly charged cases. *Murphy v. Fla*., 421 U.S. 794, 802 (1975) ("Even these indicia of impartiality might be disregarded in a case where the general atmosphere in the community or courtroom is sufficiently inflammatory."); *see also Irvin v. Dowd*, 366 U.S. 717, 728 (1961) ("No doubt each juror was sincere when he said that he would be fair and impartial to petitioner, but psychological impact requiring such a declaration before one's fellows is often its father."). Indeed, on appeal of a denial of a motion for change of venue, an appellate court need not even examine the *voir dire* record if it finds that the presumption attached. *Rideau v. Louisiana*, 373 U.S. 723, 726-27 (1963) ("But we do not hesitate to hold, without pausing to examine a particularized

9

transcript of the *voir dire* examination of the members of the jury, that due process of law in this case required a [transfer].”). Thus, under this precedent, *voir dire* is simply not a cure for significant and substantiated Due Process concerns about the jury pool.

In the present case, the ongoing news reporting in this jurisdiction, Mr. Parks submits, has risen to a level that has “inflamed passions in the host community” and “permeat[es] the trial setting . . . [such] that a defendant cannot possibly receive an impartial trial,” the district court must presume local prejudice and transfer the proceeding. *United States v. Quiles-Olivo*, 684 F.3d 177, 182 (1st Cir. 2012); *see also Sheppard v. Maxwell*, 384 U.S. 333, 362 (1966) (“Due [P]rocess requires that the accused receive a trial by an impartial jury free from outside influences.”). This is especially true where publicity is both extensive and sensational in nature. *Quiles-Olivo*, 684 F.3d at 182. That said, observing that “prominence does not necessarily produce prejudice, and juror impartiality does not require ignorance,” the Supreme Court has repeatedly rejected claims of prejudice that rely exclusively on negative but dispassionate media reporting. *Skilling*, 561 U.S. at 358 (citing *Irvin*, 366 U.S. at 722).

Because of the reporting of these matters, Mr. Parks would respectfully request that his trial and jury pool arise in a location that is not at the epicenter of the

incident itself. The pretrial publicity occurring in the District of Columbia make for a challenge to find jurors who have not been flooded with daily images of what happened at the U.S. Capitol, almost all of which did not have any direct action or involvement by Mr. Parks. Accordingly, Mr. Parks requests that this motion be granted.

### C.     The proximity between the publicity and the trial

While it has been over 18 months from the events of January 6, 2021, the publicity of the January 6th has not left the pages of our newspapers and local media. Quite to the contrary, the recent congressional hearings have once again brought the events of January 6th back to the forefront. The attention that it has drawn has been considerable. In fact, these hearings have been the "highlight" of summer television viewing. *See, e.g.,* *The January 6 Hearings Are the Best Television Series of the Summer,* Forbes, July 9 2022 (https://www.forbes.com/sites/bradadgate/2022/07/09/the-january-6-hearings-are-the-best-television-series-of-the-summer/?sh=26e4a74b20d9) Indeed, these hearings have reported with considerable detail of the horrendous acts that occurred at the U.S. Capitol. It has also brought additional attention to the actors and what specifically was done by those in the U.S. Capitol on that fateful day. Accordingly, while the event itself  may have occurred many months ago, the event itself has

never left the focus of the media and arguably, with the additional news coverage of

the January 6th Congressional Hearings, the interest level on those individuals who

participated in it and the actions that they did are even more likely in the forefront of

the attention of the American public, particularly those who are in the Washington,

DC area.

### D. Presumed prejudice

For reasons discussed above, the coverage that has been garnered due to the

January 6th hearings has been one that has not been positive. It is not a stretch to

believe that the coverage has been one of a negative nature towards defendants such

a Mr. Parks. As required by *Skilling*,  and as shown in examples above, the pretrial

publicity in DC about January 6 has been "blatantly prejudicial," and distinguishable

from the type of press coverage that failed to convince the majority of the Supreme

Court that prejudice should be presumed in *Skilling*. Accordingly, the court should

presume that the media coverage has been prejudicial and therefore should support a

transfer of venue of the present case.

WHEREFORE, Mr. Parks requests that the court grant this motion and transfer

the present matter to the Middle District of Tennessee, where Mr. Parks resides, or to

a jurisdiction the court feels is appropriate to assure a fair and impartial jury pool

and/or trial.

Respectfully submitted,

STEWART PARKS
By Counsel

/s/ John L. Machado
John L. Machado, Esq.
Bar. No. 449961
Counsel for Stewart Parks
503 D Street, N.W., Suite 310
Washington, DC 20001
Phone: (703) 989-0840
E-mail: johnlmachado@gmail.com

**Certificate of Service**

I hereby certify that a true copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system this 4th day of August, 2022, which will send a notification of such filing (NEF) to the following to all counsel of record.

/s/John L. Machado
John L. Machado, Esq.
Bar Number 449961
Attorney for Stewart Parks
Law Office of John Machado
503 D Street NW, Suite 310
Washington, D.C. 20001
Telephone (703)989-0840
Email: johnlmachado@gmail.com